# IN THE SUPREME COURT OF IOWA

No. 20–0575

Submitted April 14, 2021—Filed June 18, 2021

**IOWA ASSOCIATION OF BUSINESS AND INDUSTRY,**

Appellant,

vs.

**CITY OF WATERLOO, THE WATERLOO COMMISSION ON HUMAN RIGHTS,** and **MARTIN M. PETERSON,** in His Official Capacity,

Appellees.

---

Appeal from the Iowa District Court for Black Hawk County, John Bauercamper, Senior Judge.

A trade association appeals a declaratory judgment that a city "ban the box" ordinance is not preempted by state law. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Appel, Waterman, and Oxley, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part. McDermott, J., took no part in the consideration or decision of the case.

Ryan G. Koopmans (argued) of Belin McCormick, P.C., Des Moines, for appellant.

Timothy C. Boller (argued) of Weilein & Boller, P.C., Cedar Falls, for appellees.

David S. Walker, Windsor Heights, and Russell E. Lovell II, Des Moines, for amicus curiae NAACP.

Shefali Aurora and Rita Bettis Austen, Des Moines, for amicus curiae ACLU of Iowa; Leonard Bates of Newkirk Zwagerman, Des Moines, and Melissa C. Hasso of Sherinian & Hasso Law Firm, Des Moines, for amicus curiae Iowa Chapter of the National Employment Lawyers Association; and Elizabeth L. Avery, Berkeley, California, for amicus curiae National Employment Law Project.

**MANSFIELD, Justice.**

Suppose a park had a sign posted at the entrance: "No motorized vehicles allowed, including cars, motorcycles, scooters, and other motorized vehicles." Would we conclude that this sign prohibited a child from pushing her old-fashioned, nonmotorized scooter around the park? We think not.

This case, in our view, presents a similar interpretive problem. In 2017, the legislature adopted a statute that prohibits cities from

> adopt[ing], enforce[ing], or otherwise administer[ing] an ordinance, motion, resolution, or amendment providing for any terms or conditions of employment that exceed or conflict with the requirements of federal or state law relating to a minimum or living wage rate, any form of employment leave, hiring practices, employment benefits, scheduling practices, or other terms or conditions of employment.

2017 Iowa Acts ch. 20, § 4 (codified at Iowa Code § 364.3(12)(*a*) (2018)). Does this statute prohibit cities from independently regulating all hiring practices, or only from regulating those hiring practices that amount to terms and conditions of employment?

The difference matters here because we are asked to decide the impact of the 2017 law on a 2019 Waterloo "ban the box" ordinance. The ordinance regulates *the time when* an employer can inquire into a prospective employee's criminal history. It also regulates whether an employer can consider the employee's criminal history *at all* in making a hiring decision. The district court found that no part of the ordinance was preempted. For the reasons discussed herein in more detail, we conclude that the ordinance is preempted to the extent it purports to regulate whether an employer can consider an employee's criminal history at all—i.e., to the extent it regulates a term and condition of employment. However, it is not preempted where it only regulates timing, because that

is not a term or condition of employment. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. Facts and Procedural Background.

On November 4, 2019, the City of Waterloo (the City) voted to enact Ordinance 5522. This ordinance covers two topics: (1) when an employer can inquire into an applicant's criminal history, and (2) whether the employer can consider that criminal history in making its hiring decisions.[1]

Abraham Funchess, the director of the Waterloo Commission on Human Rights (WCHR), submitted an affidavit that provided background information on Waterloo's ordinance. Shortly after taking office in 2010, Funchess began looking at "ban the box" as a way to reduce discrimination within Waterloo. "Ban the box" is the colloquial term for a measure that limits employer inquiries into the criminal histories of prospective employees.

Waterloo has the highest African-American population, at sixteen percent, of any city in the state. African-Americans and other persons of color are disproportionately represented in the criminal justice system, not only in the United States generally but more specifically in Waterloo. Funchess was "concerned that this disparity could lead to discriminatory employment practices when an applicant's criminal history was considered." Funchess had also heard personal anecdotes from persons of color about the difficulty they were encountering in obtaining employment if they had a criminal record.

---

[1]"[B]an-the-box laws differ widely from one jurisdiction to the next." Dallan F. Flake, *Do Ban-the-Box Laws Really Work?* 104 Iowa L. Rev. 1079, 1089 (2019). "In addition to delaying the criminal record inquiry, many ban-the-box laws go further by limiting what an employer can do with criminal background information once it is obtained." *Id.* Waterloo's ordinance is of this nature.

The WCHR decided to present a proposed ordinance to the Waterloo city council for consideration. An outside attorney was commissioned to draft the ordinance. He surveyed "ban the box" ordinances that had been adopted in other cities and also received assistance from a national organization.

The proposed Waterloo ordinance was initially presented and discussed at the August 26, 2019 Waterloo city council meeting. It was later amended and received its third reading and final approval by a 4–3 vote on November 4.

As enacted, Ordinance 5522 prohibits all employers in Waterloo from asking about criminal history on a job application. Waterloo, Iowa, Code of Ordinances § 5-3-15(B) (current through June 1, 2020). It also bars employers with fifteen or more employees from making any inquiry into an applicant's criminal history until a conditional offer of employment has been made. *Id.* § 5-3-15(B)(1). Additionally, Ordinance 5522 prohibits employers with fifteen or more employees from making an adverse hiring decision based solely on arrests or pending criminal charges that have not resulted in a conviction, criminal records that have been expunged or are the subject of a pardon, or criminal records without a "legitimate business reason." *Id.* § 5-3-15(B)(2)–(4).

The term "legitimate business reason" is defined in detail elsewhere in the ordinance. *Id.* § 5-3-15(A). It includes: (1) "[s]ituations where the nature of the criminal conduct has a direct and substantial bearing on the fitness or ability to perform the duties or responsibilities of the intended employment," (2) "[s]ituations where the granting of employment would involve unreasonable risk of substantial harm to property or to safety of individuals or the public, or to business reputation or business assets," (3) "[p]ositions working with children, developmentally disabled persons

and vulnerable adults where the applicant has a conviction record of a crime against children or disabled or vulnerable adults," and (4) "[s]ituations where an employer must comply with any federal or state law or regulation pertaining to background checks and the criminal conduct is relevant to the applicant's fitness for the job." *Id.* Other than in these four situations, an employer cannot refuse to hire an employee based on the employee's criminal record. *Id.* § 5-3-15(B)(4).

While Ordinance 5522 was under consideration, but before it had been adopted, the Iowa Association of Business and Industry (ABI) wrote the entire Waterloo city council in October 2019. ABI is the largest statewide business organization with more than 1500 member businesses employing 330,000 Iowans, including thousands in Waterloo. ABI's correspondence maintained that Ordinance 5522 violated Iowa Code section 364.3(12)(*a*) (2020), which limits the ability of cities to regulate employment terms and conditions.

After the ordinance received its final approval from the city council on November 4, ABI immediately filed suit in the Black Hawk County District Court against the City, the WCHR, and the city attorney in his official capacity. ABI's petition sought injunctive and declaratory relief on the ground that the ordinance violated the aforementioned state law.

The parties submitted cross-motions for summary judgment. On March 27, with the COVID pandemic having descended on our state, the district court conducted a telephonic oral argument on the motions. On April 4, the district court entered its summary judgment ruling.

Preliminarily, the court determined that ABI had associational standing to assert the rights of its members. However, on the merits, the court ruled that the ordinance did not violate Iowa Code section 364.3(12)(*a*). The district court concluded that ABI's preemption argument

required it to reconcile section 364.3(12)(*a*) with another provision of state law—namely, section 216.19(1)(*c*) of the Iowa Civil Rights Act (ICRA). The court then found that Ordinance 5522 was "consistent with the authority given to cities" by section 216.19(1)(*c*) to prohibit a broader range of discriminatory practices under local civil rights ordinances. Thus, the court granted the defendants' motion, denied ABI's motion, and upheld the legality of the ordinance.

ABI appealed, and we retained the appeal.

## II. Standard of Review.

Generally, we review a district court's ruling on summary judgment on for correction of errors at law. *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 211 (Iowa 2018). "Summary judgment is appropriate when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763, 769 (Iowa 2020) (quoting *Munger, Reinschmidt & Denne, L.L.P. v. Lienhard Plante*, 940 N.W.2d 361, 365 (Iowa 2020)).

## III. Legal Analysis.

**A. Ordinance 5522 and Iowa Code Section 364.3(12)(*a*).** Waterloo Ordinance 5522 provides in part,

> B. Prohibited Use Of Criminal Record Information: In connection with the employment of any person, it shall be an unlawful discriminatory practice for an employer to include a criminal record inquiry on any application. It shall further be an unlawful discriminatory practice for an employer who employs fifteen (15) or more persons, but not private schools providing a regular course of instruction for any part of kindergarten through high school education, to engage in any of the following activity:
>
> 1. To make any inquiry regarding, or to require any person to disclose or reveal, any convictions, arrests, or pending criminal charges during the application process, including but not limited to any interview. The application

process shall begin when the applicant inquires about the employment being sought and shall end when an employer has extended a conditional offer of employment to the applicant. If the applicant voluntarily discloses any information regarding his or her criminal record at the interview, the employer may discuss the criminal record disclosed by the applicant.

    2. To make an adverse hiring decision based solely on the applicant's record of arrests or pending criminal charges that have not yet resulted in a conviction.

    3. To make an adverse hiring decision based on any criminal records which have been lawfully erased or expunged, which are the subject of an executive pardon, or which were otherwise legally nullified.

    4. To make an adverse hiring decision based on an applicant's criminal record without a legitimate business reason.

Waterloo, Iowa, Code of Ordinances § 5-3-15(B).

Thus, the ordinance contains two types of restrictions. In the first sentence of section (B) and in subsection (1), the ordinance imposes procedural limits on employers. That is, it defers the employer's ability to make certain types of "inquiry" until after the employer extends a conditional offer of employment. *See id.* at § 5-3-15(B), (B)(1). In subsections (2), (3), and (4), the ordinance sets forth substantive restrictions. These paragraphs forbid the employer from making an actual "adverse hiring decision" for certain reasons. *See id.* at § 5-3-15(B)(2)–(4).

Under the Iowa Constitution and laws, cities are generally granted home rule authority to enact ordinances "not inconsistent with the laws of the general assembly." Iowa Const. art. III, § 38A; Iowa Code § 364.1. However, Iowa Code section 364.3 sets forth a number of limitations on the powers of cities.

ABI insists that Ordinance 5522 is preempted by one such limitation—Iowa Code section 364.3(12)(*a*). This particular subsection became law in 2017 and provides,

> A city shall not adopt, enforce, or otherwise administer an ordinance, motion, resolution, or amendment providing for any terms or conditions of employment that exceed or conflict with the requirements of federal or state law relating to a minimum or living wage rate, any form of employment leave, hiring practices, employment benefits, scheduling practices, or other terms or conditions of employment.

2017 Iowa Acts ch. 20, § 4 (codified at Iowa Code § 364.3(12)(*a*) (2018)). ABI, quoting Iowa Code section 364.3(12)(*a*), maintains that all five of the restrictions in Ordinance 5522 are "terms or conditions of employment that exceed or conflict with the requirements of federal or state law relating to . . . hiring practices . . . or other terms or conditions of employment." Therefore, according to ABI, the entire ordinance is preempted.

**B. Iowa Code Section 216.19(1)(c)**. The district court found that Iowa Code section 364.3(12)(*a*) did not control this case because the City could derive legal authority for the ordinance from another provision of state law, section 216.19(1)(*c*) of the ICRA. That section of the ICRA provides,

> Nothing in this chapter shall be construed as indicating any of the following:
>
> . . . .
>
> *c.* Limiting a city or local government from enacting any ordinance or other law which prohibits broader or different categories of unfair or discriminatory practices.

Iowa Code § 216.19(1)(*c*). As the district court saw it, section 216.19(1)(*c*) gives municipalities like Waterloo "authority" to "prohibit[t] broader or different categories of unfair or discriminatory practices." And because Ordinance 5522 is a civil rights measure, section 216.19(1)(*c*) empowered Waterloo to enact it.

The problem with this line of reasoning is that it does not fit section 216.19(1)(*c*)'s actual wording. The section only says that chapter 216 shall not be construed as *limiting* local authority. The section does not itself

*grant* such authority. In *Petro v. Palmer College Of Chiropractic*, we made this very point regarding the related provision in section 216.19(1)(*b*), which states:

> Nothing in this chapter shall be construed as indicating any of the following:
>
> . . . .
>
> *b.* An intent to prohibit an agency or commission of local government having as its purpose the investigation and resolution of violations of this chapter from developing procedures and remedies necessary to insure the protection of rights secured by this chapter.

Rejecting the argument that Iowa Code section 216.19(1)(*b*) authorized municipalities to issue right-to-sue letters to civil rights complainants, we concluded in *Petro* that the section

> is a form of savings clause. . . . [W]e focus on the words themselves. They state that "[n]othing in this chapter shall be construed as indicating . . . [a]n intent to prohibit" the development of local procedures and remedies. Thus, section 216.19(1)(*b*) is not an independent grant of authority to cities to enact local law governing relationships between private parties . . . . At best, it allows such local law to stand if there is an independent basis for it.

945 N.W.2d at 773–74 (second omission and third alteration in original) (citation omitted) (quoting Iowa Code §§ 216.19(1), .19(1)(*b*) (2017)). Accordingly, we cannot agree with the basis upon which the district court upheld Ordinance 5522. An ICRA savings clause cannot supersede the express limits set forth in section 364.3(12)(*a*).

**C. Does Ordinance 5522 Exceed the Requirements of Federal or State Law?** Although we are not persuaded that Iowa Code section 216.19(1)(*b*) can sustain the ordinance, the City argues that the ordinance is not preempted anyway because it does not "exceed" the requirements of state and federal law. *See* Iowa Code § 364.3(12)(*a*). "Ban the box," according to the City, simply implements existing civil rights law.

We are not convinced. The Equal Employment Opportunity Commission (EEOC) has said that "[a]n employer's use of an individual's criminal history in making employment decisions may, *in some instances*, violate the prohibition against employment discrimination under Title VII of the Civil Rights Act of 1964, as amended." U.S. Equal Emp. Opportunity Comm'n, EEOC–CVG–2012–1, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act*, (2012) (emphasis added). According to the EEOC, an employer could be liable under Title VII if its use of a criminal background check had a "disparate impact" on job applicants of a particular race and if the background check was not "job related and consistent with business necessity." *Id.* The City overlooks these qualifiers and the general Title VII requirement that disparate impact must be proved on an employer-by-employer basis.[2]

Thus, in *Mandala v. NTT Data, Inc.*, the United States Court of Appeals for the Second Circuit rejected an effort to judicially "ban the box" via a court action under Title VII. *See* 975 F.3d 202, 205 (2d Cir. 2020), *reh'g denied*, 988 F.3d 664 (Feb. 23, 2021) (en banc). There, the court affirmed the dismissal of a class action complaint against a technology services provider that had a policy not to hire persons with certain criminal convictions. *Id.* The court reasoned that the plaintiffs, crucially, had failed to allege anything specific about the qualified applicant pool for this defendant:

> [W]hile Plaintiffs' statistics show that African Americans are on average more likely to have been convicted of a crime than whites, that does not, without more, make it plausible that an African-American web developer with the educational and

---

[2]Additionally, EEOC enforcement guidance does not carry the force of law. *Desmond v. Mukasey*, 530 F.3d 944, 957 (D.C. Cir. 2008).

technical qualifications to work at NTT is more likely to have been convicted of a crime than his Caucasian counterpart.

*Id.* at 212. Some other efforts to "ban the box" at particular employers through lawsuits have also been unsuccessful. *See, e.g., EEOC v. Freeman*, 778 F.3d 463, 465–66, 468 (4th Cir. 2015) (affirming summary judgment for the defendant in a Title VII discrimination case alleging that credit history and criminal background checks had a disparate impact on Black and male applicants); *Waldon v. Cincinnati Pub. Schs.*, 89 F. Supp. 3d 944, 948–49 (S.D. Ohio 2015) (granting summary judgment to the defendant on the ground that the plaintiff failed to show that a statewide law mandating criminal background checks for school employees had a disparate impact).

Our caselaw likewise requires targeted proof in a disparate impact employment-discrimination case. In *Pippen v. State*, we recognized that under Title VII, it was generally the plaintiff's burden in a disparate impact case not only to isolate a particular employment practice (such as a criminal history screen) but also to subject that practice to "meaningful statistical analysis." 854 N.W.2d 1, 26–27 (Iowa 2014). We followed a similar approach in rejecting the ICRA claim. *Id.* at 31–32.

By diving more deeply into the factual record, the special concurrence in *Pippin* demonstrated that there may have been discrimination based on race in hiring by various departments in the executive branch during the relevant time period. *See id.* at 44–45 (Waterman, J., concurring specially). The special concurrence described this situation as "disturbing." *Id.* at 45. As noted by the special concurrence, an analysis by the plaintiffs' expert

> showed that a minimally qualified white person had a forty percent greater chance of being hired than a minimally qualified African American. Splitting his analysis by department, Killingsworth testified there was a statistically

significant disparity between the percentage of African-American applicants hired and the percentage of white applicants hired in many of the departments, though not all.

*Id.* at 34. Likewise, the state's expert

> found that African Americans were statistically less likely to receive a department job interview after their application was referred by DAS. Probing more deeply, he found this was only true for about one-third of State departments. It was not true for the remaining two-thirds of departments.

*Id.* at 34–35.

The plaintiffs' case failed, however, because they simply aggregated all state executive branch departments and all stages of the hiring process together. *Id.* at 44–45.

> Instead of narrowing their focus, plaintiffs brought a class action alleging a common pattern of discrimination by the entire state executive branch of government. Having brought such a large case, it was then up to the plaintiffs to undertake the considerable work required to prove it. Under the prevailing law, this included analysis of specific hiring practices and their impact. Plaintiffs did not meet their burden.

*Id.* at 45. Thus, *Pippen* indicates that to prove a Title VII or ICRA disparate impact case, the plaintiff must offer statistical proof of the effects of the defendant's employment practice on the defendant's employment decisions. Generalizations based on overall numerical trends are not enough.

Here, the Waterloo ordinance applies to *all* employers, regardless of the characteristics of their potential applicant pool. It forbids *every* employer's use of a criminal history box on the job application form for *every* job, even if the employer might have valid business reasons for asking about criminal history. These requirements go beyond Title VII and the ICRA.[3]

---

[3]When a "legitimate business justification" exists as defined in the ordinance, an employer can conduct a background check later, i.e., after extending a conditional offer

To look at the matter another way, if Ordinance 5522 did not go beyond existing federal and state law, then why did Waterloo go to the trouble of enacting it? We are not persuaded by the City's argument that the ordinance does no more than duplicate existing state and federal civil rights protections.

**D. Does Ordinance 5522 Prescribe Terms or Conditions of Employment?** We now turn to the third potential ground on which the ordinance may be able to avoid preemption, at least in part. Iowa Code section 364.3(12)(*a*) only supersedes city ordinances establishing different "terms or conditions of employment." That is, it applies to any ordinance "providing for any terms or conditions of employment that exceed or conflict with the requirements of federal or state law relating to . . . hiring practices, . . . or other terms or conditions of employment." To the extent Ordinance 5522 does not provide for different terms or conditions of employment, perhaps it is not preempted.

Accordingly, we have to read the language of Iowa Code section 364.3(12)(*a*) carefully. It preempts ordinances that prescribe different terms or conditions of employment. This includes, most notably, local minimum wage ordinances, which were the flashpoint of the debate in 2017. Yet to the extent Ordinance 5522 merely *delays* an inquiry into criminal history, it is not prescribing different terms or conditions of employment. *Cf. Union of Auto. Technicians, AFL–CIO Loc. 563 v. Port Auth. Emp. Rels. Panel*, 144 N.Y.S.3d 12 at *13–14 (App. Div. 2021) ("The Panel rationally found that the requirements to disclose additional convictions were not terms and conditions of employment and did not require collective bargaining."); *Blackhawk Tchrs.' Fed'n Loc. 2308 v. Wis. Emp.*

_____

of employment. Waterloo, Iowa, Code of Ordinances § 5-3-15(B). But the point remains that Ordinance 5522 exceeds the requirements of federal and state civil rights law.

*Rels. Comm'n*, 326 N.W.2d 247, 258 (Wis. Ct. App. 1982) (holding that the school district had a duty to bargain over substantive antidiscrimination provisions, but not over whether "the job interview process and the job application format" could inquire into those subjects). *But see Ass'n of Pa. State Coll. & Univ. Facs. v. Pa. Lab. Rels. Bd.*, 226 A.3d 1229, 1244 (Pa. 2020) (holding that where "criminal background reports and ongoing arrest and conviction notification requirements are required for continued employment, as they are mandatory for both new and existing faculty members," they are terms and conditions of employment).

Of course, it is true that section 364.3(12)(*a*) specifically mentions "hiring practices." Whether a job application includes a question about the applicant's criminal history might normally be considered a hiring practice. Yet, we need to focus on what is preempted: *only* ordinances providing for different "terms or conditions of employment." The term "hiring practices" is sandwiched between two uses of "terms or conditions of employment." The closing flourish—"or other terms or conditions of employment"—heralds that only attempts to establish different terms or conditions of employment are preempted. Therefore, as we read the text, not all ordinances relating to hiring practices are preempted, only those that provide for hiring practices that amount to different terms or conditions of employment.

In contrast to Iowa, Michigan adopted legislation in 2015 that explicitly preempted local government efforts to regulate inquiries on an employment application:

> A local governmental body shall not adopt, enforce, or administer an ordinance, local policy, or local resolution regulating information an employer or potential employer must request, require, or exclude on an application for employment [or during the interview process] from an employee or a potential employee. This section does not

prohibit an ordinance, local policy, or local resolution requiring a criminal background check for an employee or potential employee in connection with the receipt of a license or permit from a local governmental body.

2015 Mich. Legis. Serv. Pub. Acts 105 § 4 (codified at Mich. Comp. Laws Ann. § 123.1384 (West, Westlaw through 2021 Reg. Sess.) (alteration amended at 2018 Mich. Legis. Serv. Pub. Acts 84 § 4)). This was one of nine separate provisions preempting local law relating to employer–employee relations. *See id.* §§ 5–12. Other provisions concerned topics such as minimum wage, unpaid leave, and fringe benefits. *See id.* §§ 5, 8, 11.

Likewise, Indiana enacted legislation in its 2017 legislative session that expressly preempted local ordinances regarding criminal background checks:

> Unless federal or state law provides otherwise, a political subdivision may not prohibit an employer from:
>
> (1) obtaining or using criminal history information during the hiring process to the extent allowed by federal or state law, rules, or regulations; or
>
> (2) at the time an individual makes an initial application for employment:
>
> (A) making an inquiry regarding the individual's criminal history information; or
>
> (B) requiring the individual to disclose the individual's criminal history information.

2017 Ind. Legis. Serv. Pub. L. 210-2017 § 3 (codified at Ind. Code. Ann. § 22-2-17-3 (West, Westlaw through 2021 1st Reg. Sess.)).

> So too Mississippi in 2014:

> No county, board of supervisors of a county, municipality, governing authority of a municipality or any other political subdivision shall adopt or maintain in effect any law, ordinance, or rule that creates requirements, regulations, processes or prohibitions that in any way interfere with an employer's ability to become fully informed about the

background of an employee or potential employee for the purpose of creating or maintaining a fair, secure, safe and productive workplace. Any ordinance or regulation that exists as of July 1, 2014, or is created after July 1, 2014, that violates the provisions of this section shall be explicitly preempted and voided by this section.

2014 Miss. Laws ch. 340 § 1 (codified at Miss. Code. Ann. § 17-25-33(1) (West, Westlaw through 2021 Reg. Sess.)).

Likewise, New Jersey in 2014:

The governing body of a county or municipality shall not adopt any ordinance, resolution, law, rule or regulation regarding criminal histories in the employment context, except for ordinances adopted to regulate municipal operations.

2014 N.J. Sess. Law Serv. ch. 32 § 7(a) (codified at N.J. Stat. Ann § 34:6B-17(a) (West, Westlaw through L. 2021)).

Iowa could have followed one of these models and did not. (Three of those models had already been enacted into positive law.) We think the logical consequence for this case is clear. Ordinance 5522 is preempted to the extent it attempts to establish terms and conditions of employment, including hiring practices that constitute terms and conditions of employment, but not preempted otherwise.

When we review Ordinance 5522, we see that subsections (2), (3), and (4) of section (B) actually set terms and conditions of employment. They do not allow certain employers to turn down persons with certain types of criminal records. However, section (B) and subsection (1) do not provide for terms and conditions of employment. They simply address the timing of the criminal history inquiry. *See* Dallan F. Flake, *Do Ban-the-Box Laws Really Work?* 104 Iowa L. Rev. 1079, 1092 (2019) [hereinafter Flake] (characterizing this situation as "employers remain free to discriminate against ex-offenders—just not right away").

Before we go further, we must address two points raised by ABI concerning the "terms or conditions of employment" language. First, ABI argues that this ground for avoiding preemption is not properly before us because it was raised by the NAACP as amicus curiae, not by the City as a party. Normally, we do not allow amici curiae to raise new issues. *See Press-Citizen Co. v. Univ. of Iowa*, 817 N.W.2d 480, 493–94 (Iowa 2012). However, we think a practical approach is warranted here.

In *Petro*, we considered on appeal an argument regarding specific statutory language that only an amicus curiae had raised. 945 N.W.2d at 774. We did so by crediting the appellant with raising the overall issue of whether section 216.19 of the ICRA allowed private suits under local ordinances, even though only the amicus had argued that section 216.19(4), in particular, allowed such suits. *Id.* We considered such an approach "practical." *Id.* Here, likewise, we will credit the City with raising the broad issue of whether Ordinance 5522 can avoid preemption under section 364.3(12)(*a*), while recognizing that only the NAACP relied on the "terms or conditions of employment" language within section 364.3(12)(*a*).

This approach is practical because it does not result in any unfairness to ABI. The issues in this case are purely legal. Indeed, ABI took the unusual step of omitting a statement of facts from its opening brief for precisely that reason. Moreover, ABI addressed the question of whether Ordinance 5522 prescribed "terms or conditions of employment" both in its reply brief and at oral argument. Therefore, we have a fully developed adversarial presentation on the issue.[4]

---

[4]The overall issue is still whether the district court's ruling of no preemption should be sustained. The NAACP is raising a different argument for sustaining that no preemption ruling. *See Cox v. Iowa Dep't of Hum. Servs.*, 920 N.W.2d 545, 556–57 (Iowa 2018) (same); *O'Hara v. State*, 642 N.W.2d 303, 310–12 (Iowa 2002) (considering a new argument raised by an amicus); 4 Am. Jur. 2d *Amicus Curiae* § 7, at 347–48 (2018) ("Although courts are not obligated to consider issues raised only by an amicus curiae,

ABI also urges that Iowa Code section 364.3(12)(*a*)'s reference to "hiring practices" becomes surplusage if we limit the preemptive effect of the statute to "terms or conditions of employment." *See* Iowa Code § 4.4(2) (setting forth the presumption that in enacting a statute, "[t]he entire statute is intended to be effective"). Yet, if we look at the statute as a whole, its reference to "minimum or living wage rate" is already surplusage since wage rates are clearly and indisputably terms or conditions of employment. So the statute had bells and whistles to begin with. In our view, what ultimately matters is that it preempts *some* hiring practices, namely, those that amount to terms or conditions of employment.[5]

Finally, we need to decide whether the rest of Ordinance 5522 can be sustained if the provisions that restrict adverse hiring decisions based on criminal history are stricken. This is a question of severance. In *American Dog Owners Ass'n v. City of Des Moines*, we held that the unconstitutional portions of a vicious dog ordinance could be severed from the constitutional portions. *See* 469 N.W.2d 416, 418 (Iowa 1991) (per curiam). We explained,

> When parts of a statute or ordinance are constitutionally valid, but other discrete and identifiable parts are infirm, we may sever the offending portions from the enactment and leave the remainder intact. Severance is appropriate if it does not substantially impair the legislative purpose, if the enactment remains capable of fulfilling the

courts have discretion to do so, particularly if . . . the new issues concern only other matters of law and involve important issues of policy."). In our view, given that ABI has had an opportunity to respond, it would be the better course of action *not* to strike down an entire ordinance based on state-law preemption if, in fact, it isn't preempted.

[5]With all due respect to our colleague who is dissenting in part, we do not believe views expressed by a member of the general assembly in March 2020, three years after Iowa Code section 364.3(12)(*a*) was enacted and while this case was already pending, are relevant here. *See Sullivan v. Finkelstein*, 496 U.S. 617, 632, 110 S. Ct. 2658, 2667 (1990) (Scalia, J., concurring in part) ("In my opinion, the views of a legislator concerning a statute already enacted are entitled to no more weight than the views of a judge concerning a statute not yet passed.").

apparent legislative intent, and if the remaining portion of the enactment can be given effect without the invalid provision.

*Id.* (citations omitted). We reached the same conclusion as to severability in *Hensler v. City of Davenport*, a case involving a parental-responsibility ordinance. *See* 790 N.W.2d 569, 589 (2010). In that case, we relied on the existence of a severability provision in the Davenport Municipal Code. *See id.* Notably, the Waterloo Municipal Code has a similar severability provision:

> § 1-1-7 SEVERABILITY.
>
> The sections, paragraphs, sentences, clauses and phases of this code are severable, and if any phrase, clause, sentence, paragraph or section of this code shall be declared invalid, unenforceable or unconstitutional by the valid judgment or decree of a court of competent jurisdiction, such invalidity, unenforceability or unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this code.

Waterloo, Iowa, Code of Ordinances § 1-1-7.

We conclude that the Waterloo city council would have wanted the provisions that delay inquiry into criminal history to be upheld even if the provisions that restrict use of criminal history are invalid because they violate state law. In fact, a number of "ban the box" laws and ordinances go no further than section (B) and subsection (1). They delay the inquiry; they do not prevent it. *See* Flake, 104 Iowa L. Rev. at 1089, 1092. We therefore uphold section (B) and subsection (1) of Ordinance 5522, while invalidating subsections (2), (3), and (4).

**IV. Conclusion.**

For the foregoing reasons, we affirm in part and reverse in part the district court's order, and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except McDonald, J., who concurs in part and dissents in part, and McDermott, J., who takes no part.

#20–0575, *Iowa Ass'n of Business & Indus. v. City of Waterloo*

**McDONALD, Justice (concurring in part and dissenting in part).**

The majority affirms in part the judgment of the district court because it concludes "terms or conditions of employment" as used in Iowa Code section 364.3(12)(*a*) (2020) does not include the application process and other preemployment hiring practices. This issue was not presented to the district court. This issue was not decided by the district court. This issue was not raised on appeal by any party to this proceeding. I would decline to address this issue and would reverse the judgment of the district court (as the majority does) on the issues actually preserved for and presented on appeal. Further, to the extent the issue is before this court, I disagree with the majority's interpretation of the phrase "terms or conditions of employment" as used in the statute. For these reasons, I concur in part and dissent in part.

I.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This fundamental doctrine necessarily arises out of the very nature of the judicial power. "The judicial power shall be vested in a supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish." Iowa Const. art. V, § 1. "The judicial power is ordinarily defined to be the power to construe and interpret the Constitution and laws, and to apply them and [to] decide controversies . . . ." *State v. Thompson*, 954 N.W.2d 402, 410–11 (Iowa 2021) (quoting *Hutchins v. City of Des Moines*, 176 Iowa 189, 205, 157 N.W. 881, 887 (1916)). "The power of appellate review is one aspect of the judicial power." *Id.* at 411. When exercising the power

of appellate review, this court and the court of appeals are "court[s] for the correction of errors at law." Iowa Const. art. V, § 4; Iowa Code §§ 602.4102, .5103. "If a litigant fails to present an issue to the district court and obtain a ruling on the same, it cannot be said that we are correcting an error at law." *State v. Tidwell*, No. 13–0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013).

The issue of whether the "terms or conditions of employment," as used in section 364.3(12)(*a*), includes the application process and other preemployment hiring practices was never presented to or ruled on by the district court, and the issue is not preserved for appeal. The parties filed cross-motions for summary judgment in the district court. ABI argued Ordinance 5522 "exceed[ed] the requirements of federal and state law relating to hiring practices and conditions of employment" and was thus in violation of section 364.3(12)(*a*) and article III, section 38A of the Iowa Constitution (providing that "[m]unicipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government"). The City of Waterloo (the City) did not contest that section 364.3(12)(*a*) applied to the application process and other preemployment hiring practices. Instead, it argued: (1) section 364.3(12)(*a*) does not apply at all because section 216.19 of the Iowa Civil Rights Act (ICRA) provided the City with independent authority to enact Ordinance 5522; and (2) section 364.3(12)(*a*) does not preempt Ordinance 5522 because the ordinance does not exceed the requirements of federal or state law. The district court agreed with the City, denied ABI's motion for summary judgment, and granted the City's motion for summary judgment. No party raised the issue of the scope of "terms or conditions of employment" in the

district court, and the district court did not decide (or even discuss) the issue.

The majority does not discuss the issue of error preservation. Instead, relying on *Petro v. Palmer College of Chiropractic*, 945 N.W.2d 763 (Iowa 2020), the majority concludes it can reach this wholly new issue on appeal because amicus curiae raised the issue. In doing so, the majority confuses the issue of error preservation with the issue of waiver or forfeiture of an argument on appeal. Amicus curiae's participation in this appeal is not a cure for the City's failure to preserve error on an issue. To the contrary, the rules of appellate procedure provide amicus curiae's participation is limited to assisting the court in resolving only those issues preserved for appellate review. *See* Iowa R. App. P. 6.906(1), (2) (stating an amicus brief must "assist the court in resolving issues preserved for appellate review in the case"); *id.* r. 6.906(5) (stating an amicus brief should be allowed only where the "brief will assist the court in resolving the issues preserved for appellate review in the case"). Amicus curiae are not even allowed to participate in an appeal where "[t]he proposed amicus curiae brief attempts to raise issues that were not preserved for appellate review." *Id.* r. 6.906(5)(*b*)(3).

"A supreme court is 'a court of review, not of first view.' " *UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 60 (Iowa 2019) (quoting *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017)). Because "[w]e are a court of review, . . . we do not generally decide an issue that the district court did not decide first." *33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*, 939 N.W.2d 69, 76 (Iowa 2020) (emphasis omitted). This is both a question of authority and fundamental fairness:

> Because error preservation is based on fairness, we think both parties should be bound by the rule. Ordinarily,

we attempt to protect the district court from being ambushed by parties raising issues on appeal that were not raised in the district court. We see no reason why we should not apply the same rationale to the parties themselves. . . . To that end, we hold that we will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the only ground available to uphold a district court ruling.

*DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002).

I would adhere to our fundamental doctrine of appellate review, our rules of appellate procedure, and our precedents and hold error was not preserved on the question of whether section 364.3(12)(*a*) applies to the application process and other preemployment hiring practices. I respectfully dissent from the majority's resolution of an issue not preserved for appellate review.

## II.

A second fundamental doctrine of appellate review is the party-presentation rule. Earlier this term, we explained that "[o]ur system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.' " *State v. Struve*, 956 N.W.2d 90, 99 n.2 (Iowa 2021) (second alteration in original) (quoting *United States v. Sineneng-Smith*, 590 U.S. ___, ___, 140 S. Ct. 1575, 1579 (2020)), *reh'g denied* Apr. 6, 2021. "[C]ourts are essentially passive instruments of government. . . . [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." *Id.* (alteration in original) (quoting *Sineneng-Smith*, 590 U.S. at ___, 140 S. Ct. at 1579). In accord with this general principle, "[i]t is a well-established rule of appellate procedure that '[t]he scope of appellate review is defined by the issues raised by the *parties'* briefs.' " *Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) (en banc)

(second alteration in original) (emphasis added) (quoting *Dull v. Dull*, 303 N.W.2d 402, 407 (Iowa 1981), *superseded by court rule on other grounds*, Iowa R. Civ. P. 88).

Here, the City did not argue in its appellate briefs that section 364.3(12)(*a*) does not relate to the application process and other preemployment hiring practices. The City's failure to raise the issue in its briefing constitutes waiver or forfeiture of the issue. *See Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding "unbriefed issues" were waived); *State v. Seering*, 701 N.W.2d 655, 661–62 (Iowa 2005) (holding that appellee waived issues on appeal even though issues were raised in and decided by district court because appellee failed to present arguments in appellate brief), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)); *Goodenow v. City Council*, 574 N.W.2d 18, 27 (Iowa 1998) (declining to address issue where "[p]laintiffs did not raise this issue before the district court, or in their initial brief"); *Parkhurst v. White*, 254 Iowa 477, 481, 118 N.W.2d 47, 49 (1962) (holding that appellee waived issue not argued on appeal); *Am. Mut. Liab. Ins. v. State Auto. Ins.*, 246 Iowa 1294, 1302–03, 72 N.W.2d 88, 93 (1955) (declining to express opinion on issue not raised by appellees); *MGM Apartments, LLC v. Mid-Century Ins.*, No. 13–0661, 2014 WL 251898, at *4 (Iowa Ct. App. 2014) (declining to consider issue raised in reply brief but not main brief).

The majority concludes it can nonetheless decide the issue because amicus curiae raised the issue. This is directly contrary to the party-presentation rule and our precedents. *See Press-Citizen Co. v. Univ. of Iowa*, 817 N.W.2d 480, 493 (Iowa 2012) ("The amici curiae urge that it would violate federal and state constitutional provisions if access to

public documents could depend upon the knowledge or identity of the requester. Although this argument is developed at some length in the brief of the amici, it was not raised below or by the Press-Citizen. We therefore decline to reach it."); *Rants v. Vilsack*, 684 N.W.2d 193, 199 (Iowa 2004) ("Moreover, the legislators, as amicus curiae, are unable to preserve this issue for our review."); *Mueller v. St. Ansgar State Bank*, 465 N.W.2d 659, 660 (Iowa 1991) ("Under Iowa law, the only issues reviewable are those presented by the parties."); *Shenandoah Educ. Ass'n v. Shenandoah Cmty. Sch. Dist.*, 337 N.W.2d 477, 483 (Iowa 1983) (en banc) ("The other parties in this case have not at any stage of the proceedings questioned the constitutionality of Iowa statutes, and we can review neither an issue which was not presented to the trial court nor an issue raised not by the parties themselves but only by a party in the position amicus curiae."); *Martin v. Peoples Mut. Sav. & Loan Ass'n*, 319 N.W.2d 220, 230 (Iowa 1982) (en banc) ("Reviewable issues must be presented in the parties' briefs, not an amicus brief.").

We most recently addressed this issue just last month. In *Rieder v. Segal*, the plaintiff brought a negligent credentialing claim against a hospital. *See* ___ N.W.2d ___, ___ (Iowa 2021). In that case, we stated it was an open question whether such a claim was cognizable in Iowa. *See id.* at ___. In the district court, the defendant moved for summary judgment on the ground the plaintiffs failed to establish a prima facie case assuming, without conceding, the tort was cognizable. *See id.* at ___, ___. The district court granted the defendant's motion for summary judgment on that limited ground, and the plaintiffs appealed. *See id.* at ___ On appeal, the defendant did not raise the issue of whether the tort was cognizable, but four amici requested a ruling on the issue. *See id.* at ___. Although holding the tort was not cognizable would have been dispositive

of the claim, we declined to address the issue because the issue was never presented to or ruled on by the district court and because reviewable issues must be raised by the parties and not amici. *See id.* Our decision in *Rieder* controls this case.

The majority relies on *Petro*, 945 N.W.2d 763, to reach a contrary conclusion. In that case, the plaintiff pursued in the district court a private cause of action arising under a local human rights ordinance. *See id.* at 765. The district court held it had no jurisdiction over the matter because the municipality could not confer jurisdiction on a state court over a private cause of action arising under municipal law, and the plaintiff appealed. *See id.* at 768–69. In the district court and on appeal, the plaintiff argued Iowa Code section 216.19 authorized the private cause of action and allowed for state court jurisdiction. *See id.* at 768, 770. Amici argued the same thing but relied on a different subsection of the same statute. *See id.* at 774. We concluded the issue was properly before us because Petro "rais[ed] the overall question whether Iowa Code section 216.19 authorizes suits under local ordinances." *Id.*

*Petro* is distinguishable from this case. First, in *Petro*, the plaintiff and amicus raised the same legal issue—whether section 216.19 authorized the private cause of action. While they emphasized different subsections of the same statute in support of their respective arguments, they argued the same legal issue. Here, the City and amicus do not raise the same legal issue. The City does not contest that section 364.3(12)(*a*) applies to the application process and other preemployment hiring practices. Instead, the City contends section 364.3(12)(*a*) is inapplicable because the ICRA specifically authorizes Ordinance 5522 and because Ordinance 5522 does not exceed federal or state law. Only amicus curiae raised the issue regarding the scope of section 364.3(12)(*a*).

Second, and more important, in *Petro*, this court discussed amicus curiae's argument but ultimately rejected the argument. *See* 945 N.W.2d at 774–76. While this court's discussion of the argument in *Petro* more fully fleshed out the relevant issue, the court's consideration of the argument did not change the disposition of the case. In other words, no party was prejudiced by consideration and rejection of the argument. That is not the case here. ABI loses this case, in part, based on a legal issue not raised in the district court, not decided by the district court, and not raised by any party to this case. That result is fundamentally unfair and disallowed by our precedents.

Not only is the majority's disposition of the case unfair and contrary to our own precedents, it is contrary to the general rule: "It is . . . clear beyond hope of contradiction that amici cannot 'interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore.'" *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 n.4 (1st Cir. 2016) (quoting *Lane v. First Nat'l Bank of Bos.*, 871 F.2d 166, 175 (1st Cir. 1989)); *see, e.g.*, *Sineneng-Smith*, 590 U.S. at ___, 140 S. Ct. at 1580–82 (vacating court of appeals' judgment where court of appeals ignored the party-presentation principle and relied on the arguments of amici); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 721, 134 S. Ct. 2751, 2776 (2014) (declining to consider amici's argument because the Court does not "generally entertain arguments that were not raised below and are not advanced in this Court by any party"); *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 n.4, 133 S. Ct. 1003, 1010 n.4 (2013) (declining to consider amicus curiae's argument "[b]ecause this argument was not raised by the parties or passed on by the lower courts"); *MeadWestvaco Corp. ex rel. Mead Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 31, 128 S. Ct. 1498, 1508 (2008) (declining to

address amici's issue because the question they "call upon us to answer was neither raised nor passed upon in the state courts"); *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 60 n.2, 101 S. Ct. 1559, 1562 n.2 (1981) (declining to consider amicus curiae's "argument since it was not raised by either of the parties here or below"); *Bell v. Wolfish*, 441 U.S. 520, 531 n.13, 99 S. Ct. 1861, 1870 n.13 (1979) (declining to address arguments of amicus curiae because "[n]either argument was presented to or passed on by the lower courts; nor have they been urged by either party in this Court"); *Knetsch v. United States*, 364 U.S. 361, 370, 81 S. Ct. 132, 137 (1960) (stating the court would not pass on amicus curiae's argument because "[t]his argument has never been advanced by petitioners in this case"); *Simko v. U.S. Steel Corp*, 992 F.3d 198, 206 (3d Cir. 2021) ("We have held that the role of an amicus brief is to elaborate issues properly presented by the parties, not inject new issues into an appeal. Thus, an amicus normally cannot expand the scope of an appeal with issues not presented by the parties on appeal, at least not in cases where the parties are competently represented by counsel." (internal marks and citations omitted)); *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 n.4 (D.C. Cir. 2017) ("Nor may amici expand an appeal's scope to sweep in issues that a party has waived."); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017) ("Further, we do not consider an *amicus curiae* to be a party in the case where it appears. Moreover, without 'exceptional circumstances, *amici curiae* may not expand the scope of an appeal to implicate issues not presented by the parties to the district court.' " (citation omitted) (quoting *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1247 (11th Cir. 1991)), *abrogated on other grounds by Bostock v. Clayton County*, 590 U.S. ___, 140 S. Ct. 1731 (2020); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 n.3

(5th Cir. 2009) ("It is well-settled in this circuit that 'an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal.' Accordingly, we will not consider the arguments raised only by the amicus curiae." (citations omitted)); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("An amicus curiae generally cannot raise new arguments on appeal, and arguments not raised by a party in an opening brief are waived." (citation omitted)); *Cal. Ass'n for Safety Educ. v. Brown*, 36 Cal. Rptr. 2d 404, 410 (Ct. App. 1994) ("California courts refuse to consider arguments raised by amicus curiae when those arguments are not presented in the trial court, and are not urged by the parties on appeal. ' "Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curi[a]e will not be considered [citations]." ' " (second alteration in original) (quoting *Pratt v. Coast Trucking, Inc.*, 39 Cal. Rptr. 332, 335 (Ct. App. 1964))).

## III.

Not only is the majority's disposition of this case contrary to our error preservation rules, our party-presentation rule, our precedents, and the great weight of considered authority, the majority's interpretation is constricted, at odds with itself, and contrary to the legislature's intent.

The Iowa Constitution gives the legislature "the power 'to trump or preempt local law.'" *Baker v. City of Iowa City*, 750 N.W.2d 93, 99 (Iowa 2008) (quoting *Berent v. City of Iowa City*, 738 N.W.2d 193, 196 (Iowa 2007)). The legislature chose to do so here with respect to the regulation of the "terms or conditions of employment." Iowa Code § 364.3(12)(*a*). In interpreting this preemption provision, it is immaterial whether the statute was good policy. "[T]his court does not entertain

arguments that statewide regulation is preferable to local regulation or vice versa, but focuses solely on legislative intent as demonstrated through the language and structure of a statute." *City of Davenport v. Seymour*, 755 N.W.2d 533, 539 (Iowa 2008).

I begin with the text of the statute. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("Any interpretive inquiry thus begins with the language of the statute at issue."). The statute provides:

> A city shall not adopt, enforce, or otherwise administer an ordinance, motion, resolution, or amendment providing for any terms or conditions of employment that exceed or conflict with the requirements of federal or state law relating to a minimum or living wage rate, any form of employment leave, hiring practices, employment benefits, scheduling practices, or other terms or conditions of employment.

Iowa Code § 364.3(12)(*a*). Our interpretive task is to "determine the fair and ordinary meaning of the statutory language at issue." *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021); *see also State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019) ("We give words their ordinary meaning absent legislative definition."); *Marshall v. State*, 805 N.W.2d 145, 158 (Iowa 2011) ("We should give the language of the statute its fair meaning, but should not extend its reach beyond its express terms."). In making that determination, we consider the statutory text and its "relationship to other provisions of the same statute and other provisions of related statutes." *Com. Bank*, 956 N.W.2d at 133.

Three things stand out regarding the statute. First, the statute preempts "any" local law regarding terms or conditions of employment that exceed federal or state law. "The word 'any' . . . is employed to enlarge rather than limit the terms modified. It means 'every' and 'all' . . . ." *State v. Prybil*, 211 N.W.2d 308, 312 (Iowa 1973) (en banc). This means the statute should be given an expansive reading. Second, the statute

preempts any local law regarding "terms or conditions of employment" that exceed federal or state law. Use of the term "or" in this statute is disjunctive. *See, e.g., Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 240–41 (Iowa 2015) (interpreting the word "or" to be disjunctive and citing cases). This means the statute preempts local law regarding "terms of employment" or "conditions of employment" that exceed federal or state law. Third, the legislature has acted as its own lexicographer here and explicitly identified at least some of the items that are considered to be "terms of employment" or "conditions of employment." Included among these items are "hiring practices." Considering these three things, it seems clear that the fair and ordinary meaning of the statute preempts any local law regarding hiring practices that exceed federal or state law.

The majority rejects the fair and ordinary meaning of the statute and instead concludes the statute preempts local law regarding hiring practices but only "those that amount to terms or conditions of employment." There are several problems with the majority's reading. First, that is not what the statute says. It says hiring practices, for the purpose of this statute, *are* terms or conditions of employment. When, as here, the legislature acts as its own lexicographer, we "are normally bound by the legislature's own definitions." *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010) (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010)). The majority does not abide by the legislature's own definition and instead inserts an entire restrictive clause into the statute to limit its preemptive force. "No court, under the guise of judicial construction, may add words of qualification to the statute in question or change its terms." *Kelly v. Brewer*, 239 N.W.2d 109, 114 (Iowa 1976); *see also In re Det. of Geltz*, 840 N.W.2d 273, 277 (Iowa 2013)

("[W]e are bound to follow the legislature's definitions and may not add words or change terms under the guise of judicial construction." (alteration in original) (quoting *Iowa Dep't of Transp. v. Soward,* 650 N.W.2d 569, 571 (Iowa 2002))).

Second, the majority opinion rests on the incorrect assumption that preemployment activity, or at least the completion of an application, cannot constitute a condition of employment. In the employment law context, preemployment hiring practices can be considered conditions of employment. The Code provides several examples. An employer shall not require an applicant "as a condition of employment" to take or submit to a polygraph. *See* Iowa Code § 730.4(2). Nor can an employer "as a condition of employment" require "a test for the presence of the antibody to the human immunodeficiency virus." Iowa Code § 216.6(1)(*d*). The Code also regulates drug testing of applicants as a condition of employment. *See* Iowa Code § 730.5(4). Further, the completion of the application itself, including the disclosure of criminal history information, can be considered a condition of employment. *See, e.g., Isaacs v. Dartmouth-Hitchcock Med. Ctr.,* No. 12–CV–040–LM, 2014 WL 1572559, at *2–3 (D.N.H. Apr. 18, 2014) (discussing submission of truthful application as condition of employment); *Ravenscraft v. BNP Media, Inc.,* No. 09 C 6617, 2010 WL 1541455, at *1 (N.D. Ill. Apr. 15, 2010) ("As a condition of employment with defendant, however, all employees were required to fill out and sign an employment application."); *Hobby v. Mulhern,* No. CV050081PHXSRB, 2005 WL 2739010, at *1 (D. Ariz. Oct. 21, 2005) (noting the plaintiff was discharged for "failing to meet the conditions of employment, namely that she failed to list in her employment application a December 10, 1997 arrest for 'larceny, carrying a concealed weapon, dangerous drugs, drug paraphernalia, two traffic offenses and

making a false report' "); *Chichester Sch. Dist. v. Workmen's Comp. Appeal Bd.*, 592 A.2d 774, 775 (Pa. Commw. Ct. 1991) ("The referee found that Fox completed and submitted an employment application that the School District required as a condition of employment."); *Phelps v. McGill*, No. W2002-00018-COA-R3-CV, 2002 WL 1592727, at *3–4 (Tenn. Ct. App. July 9, 2002) (explaining plaintiff was discharged for failing to truthfully complete application "as a condition of employment").

Third, because the submission of a truthful application can be considered a condition of employment, the majority opinion is at odds with itself. The majority acknowledges Ordinance 5522 goes beyond Title VII and the ICRA in prohibiting employers from asking about criminal history in an application:

> Here, the Waterloo ordinance applies to *all* employers, regardless of the characteristics of their potential applicant pool. It forbids *every* employer's use of a criminal history box on the job application form for *every* job, even if the employer might have valid business reasons for asking about criminal history. These requirements go beyond Title VII and the ICRA.

However, as noted above, an employer may establish as a condition of employment that an applicant complete an application disclosing criminal history information. As the majority acknowledges, nothing in Title VII or the ICRA prohibits this, but Ordinance 5522 does prohibit this. Under the plain language of section 364.3(12)(*a*), Ordinance 5522 should thus be preempted because it exceeds both federal and state law in disallowing an employer from imposing a lawful condition of employment.

To make the issue more concrete, consider the following example. An employer in Waterloo seeks to employ a security guard. The employer determines, as a condition of employment, an applicant must complete a truthful application disclosing criminal history information. As the

majority acknowledges, this is allowed under Title VII and the ICRA. However, Ordinance 5522 prevents this hypothetical employer from imposing this lawful condition of employment. Ordinance 5522 thus exceeds federal and state law and is preempted by section 364.3(12)(*a*). It is unclear to me how an ordinance that prohibits an employer from imposing a condition of employment allowed under federal and state law does not exceed federal or state law.

Fourth, I am not one to consider a particular legislator's views in interpreting statutes, but, to the extent one deems that important, subsequent legislative history shows the majority's interpretation of section 364.3(12)(*a*) is contrary to the legislature's intent. In 2020, the house passed a bill amending the preemption statute. *See* H.F. 2309, 88th G.A., 2d Sess. (Iowa 2020). The amendment provided for attorney fees and costs for any person that successfully challenged a preempted ordinance. *See id.* § 2. The sponsor of the legislation explained, without any dissent, the reason for the bill: "This bill became necessary as a result of a local government, the city of Waterloo, passing an ordinance in defiance of state law to ban the box on private businesses' initial employment forms." *House Video HF 2309 - Conditions of Employment*, Iowa Legislature, at 2:23:23 PM (Mar. 5, 2020), https://www.legis.iowa.gov/ perma/060120217040. The bill sponsor cited section 364.3(12)(*a*) and stated that Waterloo was regulating "hiring practices" and "what Waterloo did was clearly against the preemptions [bill] that we passed a few years ago." *Id.* at 2:23:44 PM, 2:24:30 PM. The senate never took up the bill because the legislature halted operations due to the COVID-19 pandemic. However, it seems clear that at least one chamber of the legislature, rightly in my view, understood that terms of employment or conditions of

employment include the application process and other preemployment hiring practices.

IV.

For these reasons, I concur in part and dissent in part.